In the Matter of the Claim of WILLIAM SMITH, Appellant, against ROSOFF TUNNEL, INC., Employer, and STATE INSURANCE FUND, Carrier, Respondents.

STATE INDUSTRIAL BOARD, Respondent

Third Department, May 22, 1940.

*Aronsky & Aronsky* [*Barnet Odessky* of counsel], for the appellant.

*Bernard Botein* [*George J. Hayes* of counsel], for the respondents.

Foster, J. This is an appeal by the claimant from a decision of the State Industrial Board which denied his claim for compensation, on the ground that his disability was not the result of an accidental injury sustained in the course of his employment.

Claimant was employed as a laborer by the Rosoff Construction Company, and had been so employed for six or seven months before any accident. Prior to his employment he was given a thorough medical examination, and apparently no evidence of any disability or pathological condition was discovered at that time. He claims to have been involved in two accidents, one about the 18th of August, 1936, and the other about two weeks later.

On the day of his first accident he was engaged with three other men in carrying a narrow gauge track in the subway excavation where they were working. He walked backwards in this operation, and he claims that a mucking machine backed into him so that he was caught between this machine and the track he was helping to carry. About two weeks later he fell, while carrying some pipes, and twisted his leg.

After his first accident he was examined at the company clinic. This examination revealed no evidence of injury, according to the report of the physician. He continued to work, although he claimed that he suffered pain. After the second accident he again went to the clinic, and again no evidence of injury was found. He continued to work until October tenth, but says that he had to favor his leg all the time. On October thirteenth he consulted a physician again, who found no sign of any injury, but advised him to take palliative treatments, such as hot baths, aspirin and the use of chloroform liniment. About a week later he developed a temperature and was taken to the hospital.

There it was found that he had a fracture of the transverse process of the fifth lumbar vertebra. On December 23, 1936, an X-ray examination revealed marked absorption and destruction of the head of the left femur. Three days later another X-ray examination revealed in addition marked destruction of the articular surfaces of the left femoral head and the acetabulum. In non-technical language there was apparently an area of bone destruction in the left hip. The hospital report indicates that these findings were characteristic of tubercular arthritis, and such was the provisional diagnosis.

Although the issue was raised on the hearings as to whether any accident at all happened to claimant, that issue was decided in his favor, and there is evidence to sustain the finding. He has been defeated on the issue of causal relation. There is substantial medical testimony to sustain the action of the board on that issue, nevertheless, we think the matter should be remitted for another hearing to give claimant an opportunity to produce additional medical testimony.

Claimant produced a specialist who, although he had never treated claimant, testified in answer to a hypothetical question that the hip condition was tubercular and caused by trauma. As against this there is the testimony of several physicians that the condition was septic arthritis and not the result of any accident. After these physicians had testified and at the conclusion of the hearing on May 26, 1938, the referee refused to permit claimant's counsel to produce additional medical testimony. The referee's view was that ample opportunity had been afforded before. This we think doubtful, because in view of the provisional diagnosis of tubercular arthritis arrived at in the hospital, claimant's counsel could hardly have been in a position to anticipate the final opinion of respondent's experts — that of septic arthritis.

We think the referee's refusal to permit additional medical testimony was an abuse of discretion, especially when the facts on their face would indicate a causal relation to the lay mind. There was an accident sufficiently severe to fracture the transverse process of a vertebra and injure claimant in the region of the hip. Previous to this accident there is no history of disease or accident, and the physical examination at the time of employment revealed no pathological condition. Within a few months after the accident claimant developed either tuberculosis or arthritis of the hip. We think that these facts required the referee to allow claimant greater latitude in producing medical proof by way of rebuttal.

In denying permission to produce additional medical testimony the referee said, among other things: " I have to consult with our

medical staff, and then I can make my decision." This was a gross impropriety, and a proposed method of handling a disputed question of fact which would preclude claimant from the right of cross-examination. All of the evidence concerning causal relation was opinion evidence, and the referee said in effect that he would seek additional opinion evidence, not subject to cross-examination to determine which opinion he would accept.

The decision should be reversed, with costs, and the claim remitted to give claimant an opportunity to produce additional medical testimony on the issue of causal relation.

HILL, P. J., CRAPSER, HEFFERNAN and SCHENCK, JJ., concur.

Decision reversed, with costs against the State Industrial Board, and matter remitted.